THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CRISTÓBAL DÁVILA, Defendant and Appellant.

No. 6160.   Argued November 20, 1936.—Decided February 26, 1937.

*M. Guzmán Texidor* for appellant.   *R. A. Gómez, Prosecuting Attorney, Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

Cristóbal Dávila, who was charged with having unlawfully and wilfully engaged in the Puerto Rican coffee business (*negocio*) without affixing in his establishment the sign or poster required by law, was convicted and sentenced to pay a fine of $25 and, in default of such payment, to be confined in jail one day for each dollar left unpaid.

Section 4 of Act No. 3 of June 11, 1935 (Session Laws, (2) p. 46), alleged to have been violated reads in its pertinent part as follows:

"From and after the approval of this Act, every importer, dealer, or roaster of coffee in Puerto Rico shall affix in his establishment or place of business . . . . . a sign . . . . . on which sign, below the name or firm name, shall appear: 'Dealer in Puerto Rican Coffee', as the case may be."

The violations of this act shall constitute a misdemeanor and shall be punishable by a fine of from $25 to $500, or by one day in jail for each dollar of the fine left unpaid. ·

The defendant interposed a demurrer to the information, on the ground that the same did not charge an offense. It is argued that no averment is made in said information that the defendant is an importer, dealer, or roaster of coffee.

The lower court overruled the demurrer. It is contended by the defendant that said demurrer, which was timely interposed, should have been sustained.

It is true that the phrase "dealer in coffee" is not used in the information, but it is alleged therein that the defendant was engaged in the Puerto Rican coffee business.

According to the Dictionary of the Spanish Academy, a dealer (*traficante*) is a person who deals or trades. *To deal* (*traficar*) according to the same dictionary, is "to trade, to negotiate by means of money and merchandise, buying or selling, or by means of other similar dealings." *To negotiate* is "to deal and trade, buying, selling, or exchanging goods, merchandise or commodities with a view to increasing one's wealth." *Business* (*negocio*), in one of its acceptations, means "everything that is the object or the subject-matter of a profitable or interested occupation." Moreover, according to the above-mentioned dictionary, a *negotiation* is "the gain or interest obtained by dealing, trading, or bargaining."

The act authorizes the Commissioner of Agriculture and Commerce to prescribe rules and regulations not inconsistent with the provisions of the act, for the better execution thereof. The regulations promulgated by the Commissioner of Agriculture and Commerce define the word "dealer" (*traficante*) as follows:

"Every person who by himself or through his agents or employees, engages in the sale, exchange, or barter of Puerto Rican coffee, foreign coffee, or Puerto Rican coffee mixed with foreign coffee, within or without his commercial establishment, or in any separate place or in connection therewith, shall be considered as a dealer, and he shall be regarded as such whenever he keeps for sale, transfers, exchanges, or has the said goods in display for public sale, either in his commercial establishment, or in any separate place or in connection therewith, or for any other purpose."

In our opinion, the words contained in the information charge a public offense, whether we rely on the plain terms of the statute, or resort to the regulations, which can not be

in conflict with the act. The defendant was engaged, according to the information, in the Puerto Rican coffee business without affixing in his establishment the sign required by the act. That is, the defendant was engaged in dealing in Puerto Rican coffee, buying or selling the same, without having complied with the provisions of the statute. It is clear that in accordance with the act, a coffee grower in Puerto Rico who sells and delivers coffee produced on his plantation in the establishment thereof, is not guilty of any offense, even though he is engaged in the Puerto Rican coffee business, since the act itself expressly says that "it shall be understood that the person selling exclusively the coffee produced on his plantation is not a dealer." This exception, which in our opinion affirms the general rule and constitutes a defense, need not be alleged in the information.

The appellant further says that the evidence failed to establish the defendant's guilt beyond a reasonable doubt. We have carefully examined the evidence introduced, and we do not think that the lower court committed such an error in weighing the evidence as would justify a reversal of its judgment.

The judgment appealed from must be affirmed.

Mr. Justice Wolf and Mr. Justice Travieso dissented.

Mr. Justice Travieso, dissenting.

I am sorry I must dissent from the opinion of my colleagues.

In this case Cristóbal Dávila was prosecuted on a charge of having unlawfully and wilfully *engaged in the Puerto Rican coffee business without affixing in his establishment the sign or poster* provided for by section 4 of Act No. 3 of June 11, 1935. Said section, in so far as pertinent, reads as follows:

"From and after the approval of this Act, every *importer, dealer, or roaster* of coffee in Puerto Rico shall affix in his establishment or

place of business, . . . . . a sign . . . . . on which sign, below the name or firm name, shall appear: . . . 'Dealer in Puerto Rican Coffee,' . . . . . as the case may be.''

The defendant demurred to the information, on the ground that the same did not state an offense, nor did it charge a violation of Act No. 3, *supra*, as it is not alleged therein that the defendant is ''an importer, dealer, or roaster'' of coffee. The lower court overruled the demurrer, proceeded to hear the case, and convicted the defendant. The latter took the present appeal.

The demurrer was well founded. Every defendant has a right to be precisely and clearly informed of the offense with which he is charged. And that right was ignored in the instant case.

The fundamental purpose of the act which the defendant is said to have violated is to prosecute and punish the importation and sale of foreign coffee in Puerto Rico, under the guise of native coffee, thus deceiving the consumer and bringing discredit upon the product of our Island. It is with this purpose in mind that the act imposes upon the *importer* who introduces foreign coffee into the Island; upon the *dealer,* who engages in the sale, exchange, or barter of coffee in Puerto Rico; and upon the *roaster* of coffee in Puerto Rico, the obligation of informing the public about the origin of the coffee which he offers for sale in his commercial establishments within the Island.

The appellant is not charged with being an importer nor a roaster of coffee. The prosecuting attorney (*Fiscal*) maintains, and with him the majority of the court, that the words ''was engaged in the Puerto Rican coffee business without affixing in his establishment the sign or poster, etc.'' are sufficient to charge the defendant with a violation of the statute, as an unlawful ''dealer'' in coffee. In other words, it is maintained that ''to engage in the coffee business'' and ''to deal'' or to be a ''dealer'' in coffee, mean the same thing.

And it is on that point that the undersigned justice feels bound to dissent.

It is not necessary to resort to dictionaries or legal texts to find the definition of what is meant by ''dealer'' within the purview of the statute which we are discussing. The regulations promulgated by the Commissioner of Agriculture and Commerce, in accordance with the powers conferred upon him by section 12 of Act No. 3 of 1935, provide:

''*Dealer.*—Every person who by himself or through his agents or employees, engages in the sale, exchange, or barter of Puerto Rican coffee, foreign coffee, or Puerto Rican coffee mixed with foreign coffee, within or without his commercial establishment, or in any separate place or in connection therewith, shall be considered as a dealer, and he shall be regarded as such whenever he keeps for sale, transfers, exchanges, or has the said goods in display for public sale, either in his commercial establishment, or in any separate place or in connection therewith, or for any other purpose.''

In accordance with the preceding definition, an information alleging that the defendant was engaged in ''selling'' or in ''exchanging'' or in ''bartering'' Puerto Rican or foreign coffee, within or without his commercial establishment; or alleging that the defendant kept coffee for sale, or that he transferred, exchanged, or had it for public sale, in his commercial establishment, without affixing the sign required by the act, would undoubtedly be sufficient to inform the defendant that he was charged with being an unlawful ''dealer'' or with dealing unlawfully in Puerto Rican coffee.

It may thus be seen that the act is intended for the prosecution of unlawful *dealing,* and that by ''dealing in coffee'' the same act means to sell, exchange, barter, keep for sale, transfer, or have coffee in display for public sale.

The words ''was engaged in the Puerto Rican coffee business'' used in the information to describe the offense with which the defendant is charged, do not necessarily imply the commission of any of the acts which, according to the statute in question would constitute an *unlawful dealing*

or would make the defendant a "dealer" bound to comply with the requirements of the said act. The very same words may be used to describe situations or facts which are beyond the purposes or scope of the act. It is undisputable that a coffee grower in Puerto Rico, who sells and delivers coffee produced on his plantation in the establishment thereof, is engaged in the coffee business in Puerto Rico; and the same may be said of the merchant who buys from our grower the coffee produced by the latter on his plantation in order to export the same to foreign markets. The one as well as the other could be charged with being "engaged in the coffee business in Puerto Rico," as it can not be doubted that the grower, in selling his coffee in the industrial establishment of his plantation, and the "exporter" of coffee, in buying the same, are making a business transaction. But the information could not be sustained, inasmuch as neither the "producer," nor the "exporter," nor the "buyer" of coffee are bound to affix the sign or poster required by the act.

The information filed against the appellant does not charge any offense whatsoever and, therefore, the lower court erred in overruling the demurrer.

It can not be argued herein that the defects in the information have been cured by the evidence, as the defendant attacked the information in due time.

I am authorized by Justice Wolf to state that he agrees with this opinion.

The judgment appealed from should be reversed.